MOSES SWIFT, Respondent, *v.* STATEN ISLAND RAPID TRANSIT COMPANY, Appellant.

*Court of Appeals, Oct.* 21 1890.

Aff'g 52 Hun, 614, Mem.

1. *Railroads. Negligence.*—Where the public have, for a long time, notoriously and constantly been in the habit of crossing a railroad at a point, not in a traveled highway, with the acquiesence of the railroad company, such acquiescence amounts to a license, and imposes a duty upon the company, as to all persons so crossing, to exercise reasonable care in the running of its trains, so as to protect them from injuries.

2. *Same.*—Though, in such cases, the company is not absolutely bound to ring a bell or blow a whistle upon the locomotive of a train approaching such a crossing, yet it is bound to give some notice and warning; and as to what is sufficient in this regard is a question for the jury.

3. *Same.*—The fact that the bell was rung does not, as matter of law, establish the fact that the company used reasonable care, but it is for the jury to determine whether any other precaution should have been taken by those in charge of the train.

4. *Same.*—The degree of care and caution required by the law in such cases, depends upon the maturity and capacity of the individual and all the surrounding circumstances; if there is any doubt as to the facts, or as to the inference to be drawn from them, the question cannot be determined as matter of law, but must be submitted to the jury.

Appeal from a judgment of the general term of the supreme court, affirming a judgment in favor of plaintiff entered upon a verdict, and an order denying a motion for a new trial.

*W. W. McFarland,* for appellant.

*James C. Foley,* for respondent.

O'BRIEN, J.—The plaintiff's daughter, a girl then fifteen years old, was quite seriously injured by one of the defendant's trains at or near the station in the village of New Brighton, on the 4th of July, 1887. For the expenses incident to her care and attendance during her illness and the loss of her services, the father recovered a verdict of $575, and the general term has affirmed the judgment entered thereon. There are two questions to be considered upon this appeal. First, whether there is any evidence in the record that warranted the jury in finding that the injury to the girl was caused by negligence or want of proper care on the part of the defendant; and, if so, then, secondly, whether she was herself guilty of negligence contributing to the injury. At the place where the accident occurred, the defendant's double track road runs east and west just in the rear of a cluster of houses, in one of which the girl's sister

and her husband lived. This house was situated within a few feet of the south track, and separated therefrom by a board fence six feet high, in which was a door which swung to the west, and through which the inmates of the house passed out and crossed the track to deposit ashes and garbage in barrels kept on the north side of the track, and also to reach the highway, ferry and store beyond. These houses were mostly built before the railroad which, when constructed, separated them from the road on the north. There was a board or plank walk leading from near the rear of these houses on the south across the railroad upon which the people occupying the houses and others had for many years, to the knowledge of the defendant, passed, when depositing the ashes and garbage in the barrels north of the track, and also in order to reach the road, ferry and store on that side. Though not a public sidewalk or highway, it had practically been used as such for a long time by numerous persons living south of the track for the purpose of crossing to the north with the knowledge and permission of the defendant.

Two days before the accident the girl arrived at her sister's house for the first time, her home being in Canada. She was therefore practically a stranger to the place, and so far as appears ignorant of the dangers incident to that locality. On the morning of the accident she was requested by her sister to take a pail of ashes and garbage from the house across the track to the barrel on the north side. The sister pointed out to her the path leading across the track and the barrel beyond, warning her to be careful of the trains passing on the railroad. The girl says that she took the pail in both hands, passed out through the door in the rear of the house, through the door or gate in the high fence, and when stepping upon the south track she looked both east and west on the railroad track. There was no train to be seen coming from the west, but the train from the east had arrived at the station some distance east of the house and was starting west. The girl stepped upon the southerly

track, waited there a short time for the train from the east to pass by, and then started to cross the north track, when she was struck by the train from the west and sustained the injuries complained of. The train was running, according to the testimony of defendant's witnesses, at the rate of twelve to fifteen miles an hour, and, according to some of the plaintiff's witnesses, as fast as twenty-five miles an hour. The girl testified, as already observed, that just as she stepped upon the south track she looked towards the west and there was no train then in sight. The engineer of the train from the west could have seen the girl after she stepped on the track and after it had passed the curve at the Plaster Mill, a distance of nine hundred feet west of the point where the accident occurred, and if the girl's statement is correct that when she went upon the track she looked west and no train was in sight, then the engineer could have seen her upon the track when the train was nine hundred feet from her, and of course in time to avoid the collision. The engineer admits that he did see her when the train was two hundred and four feet west of the point where the injury occurred, and if the girl is correct in her statement he must have seen her on the track and not in the gate as he says. The jury could have accepted the statement of the girl and the other witnesses for the plaintiff, and if they did give credit to them could have found that though the engineer could have seen the girl on the track when distant from her 900 feet and did see her when over 200 feet distant, yet, thinking that she could cross before he reached her, he rushed on with his train at a high rate of speed and thus inflicted the injury which by the exercise of ordinary care and prudence on his part could have been avoided by stopping the train, sounding the whistle or giving some signal of the danger, which he neglected to do till it was too late. If it be conceded that the girl was upon the track without license or right, yet if the engineer continued to run the train knowing that she was there, or if he could have known it by the

exercise of ordinary prudence and care, that furnished some proof of negligence. The train was approaching a station in a village where he knew that people were frequently crossing the track, and this fact called for at least some degree of vigilance on his part in order to avoid accidents. The question of defendant's negligence was therefore one of fact and while the evidence submitted to the jury, and upon which they were called upon to determine it, is far from being clear or satisfactory, yet it cannot be said that the finding in this respect is without any evidence to support it. Its sufficiency was, under all the circumstances of the case, for them alone.

The legal principles applicable to the facts appearing here have been frequently enunciated by this court, to the effect that where the public have for a long time, notoriously and constantly, been in the habit of crossing a railroad at a point not in a traveled public highway, with the acquiescence of the railroad company, such acquiescence amounts to a license and imposes a duty upon the company, as to all persons so crossing, to exercise reasonable care in the running of its trains, so as to protect them from injury. Although in such cases the company is not absolutely bound to ring a bell or blow a whistle upon the locomotive of a train approaching such a crossing, yet it is bound to give some notice and warning, and as to what is sufficient in this regard is a question for the jury. Where a train is approaching a crossing of this character the fact that the bell was rung does not, as matter of law, establish the fact that the company used reasonable care ; but it is for the jury to determine whether any other precautions should have been taken by those in charge of the train. Barry *v.* New York Central, etc., R. R. Co., 92 N. Y. 289 ; Byrne *v.* New York Central, etc., R. R. Co., 104 Id. 362 ; 5 N. Y. State Rep. 722.

If it be assumed in this case that the girl stepped upon the track and attempted to cross without looking to ascertain whether a train was approaching from the west, or if

she did look and saw it, and nevertheless attempted to cross, then, no doubt, she was guilty of contributory negligence. But the difficulty is, that the testimony on this point is conflicting. She swears, as before observed, that before stepping upon the track she looked to the west and no train was in sight from that direction, and then looking to the east she saw the train about to start from the station, and that waiting for a moment for the train from that direction to pass, she again started to cross and was struck by a train from the other direction, which, according to the evidence of other witnesses, was running at a high rate of speed. She was unfamiliar with the locality, and presumptively in regard to the time of the arrival and departure of trains. Her attention was attracted by the passing train from the east, and her opportunities to see and hear the train from the west were obstructed by the smoke and noise of the bell and engine of the train just starting out, and under all the circumstances it cannot, as we think, be held as matter of law that she neglected to exercise that degree of care and caution required of a person of her age, situated as she was. The degree of care and caution required by the law in such cases depends upon the maturity and capacity of the individual, and all the surrounding circumstances ; and if there is any doubt as to the facts, or as to the inferences to be drawn from them, the question cannot be determined as matter of law, but must be submitted to the jury. As was said in the case of Mowrey *v.* The Central City Railroad Co., 51 N. Y. 666, " the old, the lame, the infirm or the young are entitled to have their condition and ability, mental and physical, considered in diminution of the degree of care exacted of them ; and that no greater degree of care was required than the capacity of the person would allow him to exert." In Byrne *v.* The New York Central, etc., R. R. Co., 83 N. Y. 620, it is said " the law is not so unreasonable as to exact from an infant the same degree of care and prudence in the presence of danger as is exacted from

adults. An infant, to avoid the imputation of negligence, is bound only to exercise that care which can reasonably be expected of one of its age." The same rule is reiterated in the case of Dowling v. N. Y. C., etc., R. R. Co., 90 N. Y. 670.

We think that whether, under all the circumstances disclosed, the girl was wanting in the exercise of a proper degree of prudence and care, was a question of fact.

The judgment should be affirmed.

All concur, except PECKHAM and GRAY, JJ., dissenting.